ORIGINAL

Glenn R. Kantor, Esq. State Bar No. 112643
  E-Mail: gkantor@kantorlaw.net
Elizabeth Green, Esq. State Bar No. 199634
  E-Mail: egreen@kantorlaw.net
KANTOR & KANTOR, LLP
17216 Parthenia Street
Northridge, CA 91325
TEL: (818) 886-2525
FAX: (818) 350-6272

FILED
JUL 2 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for Plaintiff,
DOROTHY MCGUIRE

BZ

UNITED STATES DISTRICT COURT

C 07 3466

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| DOROTHY MCGUIRE, | CASE NO: |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| VS. | (1) BREACH OF CONTRACT |
| CONTINENTAL CASUALTY COMPANY, | (2) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING |
| Defendants. | DEMAND FOR JURY TRIAL |

PLAINTIFF, DOROTHY MCGUIRE, FOR HER FIRST CLAIM AGAINST DEFENDANT CONTINENTAL CASUALTY COMPANY FOR BREACH OF CONTRACT ALLEGES:

1.    Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, exceeds the sum of $100,000.00.

2.    Venue is proper in this Court based upon 28 U.S.C. § 1391(a).

3.    Plaintiff is informed and believes that Defendant Continental Casualty Company ("CNA") is a corporation incorporated in and with its principal place of business in the State of Illinois authorized to transact and transacting business in the Central District of California and can be found in the Central District of California.

1

1    4.    Plaintiff, Dorothy McGuire, ("McGuire") is a resident and citizen of the City of Orinda, County of Contra Costa, State of California.

5.    Defendant BANKER'S LIFE issued to Plaintiff a policy of Long Term Care Coverage, Policy Number 076355317 on or about October 1, 1990. Among the benefits provided by the policy was the benefit that if the insured became in need of assistance with the activities of daily living, CNA would pay the insured benefits in an amount set by the policy. (A copy of said policy is attached hereto as Exhibit "A".)

6.    All premiums due on the policy have been paid. At all relevant times, Plaintiff has performed all obligations under the policy on her part to be performed.

7.    In or about May 2006, the Plaintiff suffered a loss compensable under the terms of the policy in that she became unable to care for herself on a daily basis.

8.    Pursuant to the terms of the policy, Plaintiff made a claim to CNA for long term care benefits under the Policy. Via numerous written and oral communications between defendant CNA, and the Plaintiff, via her daughter/power of attorney, Victoria Bonnington, Plaintiff has been notified by CNA that she was not eligible for benefits under the terms of her Long Term Care Policy.

9.    As a direct and proximate result of CNA'S improper determination regarding Plaintiff's long term care claim, Plaintiff has been deprived of benefits.

10.    The improper determination of the Plaintiff's long term care benefit claims constitutes a breach of the insurance contracts between CNA and the Plaintiff. As a direct and proximate result of the Defendant's breach of the subject insurance policies, the Plaintiff has suffered contractual damages under the terms and conditions of the policy in an amount in excess of $8,000.00 per month, and will continue, plus interest and other incidental damages and out-of-pocket expenses, all in the sum to be determined according to proof at the time of trial.

**PLAINTIFF, FOR A SECOND CLAIM FOR RELIEF AGAINST DEFENDANT CONTINENTAL CASUALTY COMPANY FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING ALLEGES:**

11. Plaintiff refers to Paragraphs 1 through 10, inclusive, of the First Claim for Relief and incorporates those paragraphs as though set forth in full in this cause of action.

12. Defendant has breached its duty of good faith and fair dealing owed to Plaintiff in the following respects:

   (a) Unreasonable and bad faith failure to pay the insurance proceeds of the long term care policies at issue at a time when Defendant knew Plaintiff was entitled to said full benefits under the policies;

   (b) Unreasonably delaying payments to Plaintiff in bad faith knowing Plaintiff's claim for benefits under the policies to be valid for the reasons set forth in subparagraph (a).

13. Plaintiff is informed and believes and thereon alleges that Defendant CNA has breached its duties of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware. Plaintiff will seek leave of the Court to amend this Complaint at such time as Plaintiff discovers the other acts or omissions of said Defendant constituting such breach.

14. As a proximate result of the aforementioned wrongful conduct of Defendant, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, for a total amount to be shown at the time of trial.

15. As a further proximate result of the aforementioned wrongful conduct of Defendant, Plaintiff has suffered anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, all to Plaintiff's general damage in the sum to be determined at the time of trial.

16. As a further proximate result of the aforementioned wrongful conduct of Defendant, Plaintiff was compelled to retain legal counsel to obtain the benefits due

3

1  under the Policies. Therefore, Defendant is liable to Plaintiff for those attorneys' fees
2  reasonably necessary and incurred by Plaintiff to obtain the Policy(s) benefits in a sum
3  to be determined at the time of trial.

4      17.    Defendant's conduct described herein was intended by the Defendant to
5  cause injury to the Plaintiff or was despicable conduct carried on by the Defendant with
6  a willful and conscious disregard of the rights of Plaintiff, subjected the Plaintiff to cruel
7  and unjust hardship in conscious disregard to her rights, and was an intentional
8  misrepresentation, deceit, or concealment of a material fact known to the Defendant with
9  the intention to deprive the Plaintiff of property, legal rights or to otherwise cause injury,
10 such as to constitute malice oppression or fraud under California *Civil Code* § 3294,
11 thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or set
12 an example of Defendant.

13     WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

14     1.    Damages for failure to provide full benefits under the Policies, in an amount
15 to be determined at the time of trial but in excess of $600,000.00 plus interest, including
16 prejudgment interest, in a sum to be determined at the time of trial;

17     2.    General damages for mental and emotional distress and other incidental
18 damages in the sum of $900,000.00;

19     3.    Punitive and exemplary damages in an amount in excess of $10,000,000.00;

20     4.    For attorneys' fees reasonably incurred to obtain the Policy benefits in a
21 sum to be determined at the time of trial;

22     5.    For costs of suit incurred herein; and

23     6.    For such other and further relief as the Court deems just and proper.

25 DATED: June 25, 2007            KANTOR & KANTOR, LLP

27                             BY:_____
28                                GLENN R. KANTOR
                               ATTORNEYS FOR PLAINTIFF
                               DOROTHY MCGUIRE

**DEMAND FOR JURY TRIAL**

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

DATED: June 25, 2007

KANTOR & KANTOR, LLP

BY _____
GLENN R. KANTOR
ATTORNEY FOR PLAINTIFF
DOROTHY MCGUIRE

**EXHIBIT A**

## Continental Casualty Company

**CNA**
For All the Commitments You Ma

CNA Plaza
Chicago, Illinois 60685

A Stock Company

*(same as lab)*

We promise to pay benefits as provided in this policy. We have issued this policy to You in consideration of the payment of the First Premium and the statements made in Your application.

Payment of the First Premium keeps Your policy in force for the Policy Term. You may renew this policy for further periods by payment of the Renewal Premium, subject to Our right to change premium as described below. The First Premium, the Renewal Premium and the Policy Term are shown in the Schedule.

### GUARANTEED RENEWABLE FOR LIFE
### PREMIUMS SUBJECT TO CHANGE

We guarantee to renew Your policy as long as the premium is paid within the allowable time. We can make no change to Your policy without Your consent.

We can change the premium rate for the policy, but only if We give You 31 days prior written notice and We change the premium rate for everyone who has this policy form in Your policy rating group in Your state.

### YOUR THIRTY DAY RIGHT TO EXAMINE YOUR POLICY

If You are not satisfied with Your policy, You may return it to Us or Our agent within 30 days after You receive it. We will then refund any premium You have paid. The policy will be considered to have never been issued.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

*[handwritten: CNA → 1-800-775-1541]*
*[handwritten: Claims 1-800-262-1037]*

_____
Corporate Secretary

_____
Chairman of the Board

COUNTERSIGNED _____
LICENSED RESIDENT AGENT (WHERE REQUIRED BY LAW)


P1-59433-A                **LONG TERM CARE POLICY**

INSURED: DOROTHY D. MC GUIRE    POLICY NUMBER: 076355317

I-59434-A                     -3-

**BENEFITS**

| | | |
|---|---|---|
| ELIMINATION PERIOD | 90 | DAYS |
| LONG TERM CARE BENEFIT | $150 PER DAY $262⁵⁰/$131²⁵ (handwritten) | |
| BENEFIT PERIOD | 2,190 DAYS (6 YEARS) | |
| LIFETIME MAXIMUM BENEFIT | NONE | |

WAIVER OF PREMIUM BENEFITS INCLUDED

**ADDITIONAL BENEFITS**

PRIOR HOSPITALIZATION NOT REQUIRED
INFLATION PROTECTION BENEFIT          *Max Benefits* (handwritten)
EXTENDED HOME HEALTH CARE RIDER

| | |
|---|---|
| EFFECTIVE DATE: OCTOBER 1, 1990 | POLICY TERM: ANNUAL |
| FIRST PREMIUM: $124.99 | RENEWAL PREMIUM: $1363.50 |
| INSURED: DOROTHY D. MC GUIRE | POLICY NUMBER: 076355317 |

I-59434-A                        -3-

EXHIBIT "A"                                McGuire - 02


(Same as back)

Whenever used in this Policy:

"You" and "Your" means the Insured named in the Schedule.

"We" "Our" and "Us" means the Continental Casualty Company, CNA Plaza, Chicago, Illinois, 60685.

"Effective Date" means the effective date of coverage under Your policy.

"Injury" or "Sickness" means injury or sickness that results in loss that begins while Your policy is in force; however, loss resulting from a Pre-existing Condition is subject to the Pre-existing Condition Limitation in Part 3.

"Pre-existing Condition" means any condition for which You received medical advice or treatment within the 6 months before Your policy Effective Date.

"Hospital" means a place which is licensed by the state as a Hospital and is operating within the scope of its license.

"Skilled Nursing Facility" means a place which:

1. is licensed by the State;
2. provides skilled nursing care under the supervision of a physician;
3. has 24-hour-a-day nursing services by or under the supervision of a registered nurse (RN); and
4. keeps a daily medical record of each patient.

It does not include a facility or any of its sections which is primarily a place for persons suffering from mental disease.

"Intermediate Care Facility" means a place which:

1. is licensed by the State;
2. provides nursing care to persons who do not require the degree of care which a Hospital or Skilled Nursing Facility provides, but require care above the level of room and board under the supervision of a physician;
3. provides nursing care by or under the direction of a registered nurse (RN) or a licensed practical or vocational nurse (LPN or LVN); and
4. keeps a daily medical record of each patient.

It does not include a facility or any of its sections which is primarily a place for persons suffering from mental disease.

"Long Term Care Facility" means a Skilled Nursing Facility or an Intermediate Care Facility.

"Skilled Care" means care for injury or sickness which: 1) requires the training and skills of a licensed professional nurse; 2) is prescribed by a physician; 3) is medically necessary for the condition or illness of the patient; and, 4) is available on a twenty-four-hour basis.

"Intermediate Care" means technical nursing care which requires selected nursing procedures for which the degree of care and evaluation is less than that provided for Skilled Care, but greater than that provided for Custodial/Personal Care.

P1-59433-A                                   -4-

"Custodial Care" or "Personal Care" means care which is mainly for the purpose of meeting daily living requirements. This level of care may be provided by persons without professional skills or training. Examples are: Help in walking, getting out bed, bathing, dressing, eating meals, and taking medications.

"Medically Necessary" means care or services which are: 1) recommended by a physician, other than the owner or an employee of a Long Term Care Facility; 2) in keeping with accepted medical standards for Your Injury or Sickness; and 3) not primarily for the convenience of the insured or the insured's family.

"Long Term Care" means Skilled Care, Intermediate Care, or Custodial Care or Personnal Care, which are Medically Necessary.

"One Period of Confinement" means consecutive days of Long Term Care received as an inpatient in a Long Term Care Facility or successive confinements due to the same or related causes when discharge from and readmission to the Long Term Care Facility occurs within a period of 180 days. If Long Term Care confinements are separated by 180 days or more, a new period of confinement begins subject to a new hospitalization requirement and Elimination Period, if any.

"Elimination Period" means the number of days at the beginning of a Long Term Care Facility confinement for which no benefits are payable.

"Benefit Period" means the period of time for which You are eligible to receive benefits under the policy. A benefit period begins on the first day that You are eligible for and begin to receive benefits. The benefit period ends when You are no longer eligible to receive benefits or have received the Lifetime Maximum Benefit.

"Lifetime Maximum Benefit" means the means the total period for which benefits are payable for Long Term Care Facility confinements, regardless of whether they are incurred during more than one Period of Confinement.

(Same as Dad's)



## GENERAL BENEFIT INFORMATION

1. The Elimination Period, the Long Term Care Benefit, and the Benefit Period are shown in the Schedule.

2. All benefits payable are subject to the Lifetime Maximum Benefit shown in the Schedule.

3. In order to be payable, all Long Term Care Facility confinements must begin while Your policy is in force and must result from Injury or Sickness. Termination of Your policy will not affect any claim for Long Term Care that begins before termination.

## LONG TERM CARE BENEFIT

We will pay You the Long Term Care Benefit for each day You require Long Term Care in a Long Term Care Facility. Benefits begin after the Elimination Period and are payable for the length of the Benefit Period for any One Period of Confinement. In order for benefits to be payable, Your Injury or Sickness must require and continue to require Long Term Care.

## WAIVER OF PREMIUM BENEFIT

After a covered Long Term Care Facility confinement of 90 consecutive days, We will waive the payment of any premium becoming due during any further continuous period of confinement in a Long Term Care Facility. A covered Long Term Care Facility confinement includes the days which are used to satisfy the Elimination Period. Premiums that become due will be waived until Your discharge from the Long Term Care Facility or until benefits are no longer payable, whichever occurs first; thereafter, You must make premium payments when due.

( Same as Dad's )

**EXCLUSIONS**

This policy does not cover any Long Term Care Facility confinement which is:  *(Same as Dad)*

1. due to Injury or Sickness for which benefits are payable under Workers' Compensation or Occupational Disease Act or Law;
2. due to mental, psychoneurotic, or personality disorders without demonstrable organic disease; or
3. the result of war or any act of war.

**PRE-EXISTING CONDITIONS LIMITATION**

Long Term Care Facility confinements due to Pre-existing Conditions shown on the application are covered immediately.

We will not pay benefits for a Long Term Care Facility confinement due to a Pre-existing Condition which is not disclosed in the application unless confinement begins 6 months or more after the Effective Date.

**PART 4: CLAIMS**
**WRITTEN NOTICE OF CLAIM**

Written notice of claim must be given to Us within 30 days after a covered loss begins, or as soon as reasonably possible.

The notice will be sufficient if it identifies You and is sent to Us at Our Home Office, CNA Plaza, Chicago, Illinois 60685 or is given to Our Agent.

**CLAIM FORMS**

After We receive written notice of claim, We will furnish claim forms within 15 days. If We do not, You will have met the requirements for written proof of loss if You send Us a written statement of the extent and nature of the loss.

**WRITTEN PROOF OF LOSS**

Written proof of loss must be sent to Us within 90 days after the end of a period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated written proof must be given within one year.

**TIME OF PAYMENT OF CLAIMS**

We will pay any benefit due You immediately after We receive due written proof of loss.

**PAYMENT OF CLAIMS**

All benefits are paid to You, or Your estate unless You have assigned them elsewhere.

If benefits are payable to Your estate, We may pay up to $1,000 to any relative of Yours whom We feel is entitled to the benefits. Any payment made in good faith will discharge Us to the extent of the payment.

**PHYSICAL EXAMINATION**

At Our expense, We will have the right to have a physician examine You as often as reasonably necessary while Your claim is pending.

**MISSTATEMENT OF AGE**

If Your age has been misstated, policy benefits will be those that the premium would have purchased at Your correct age. If coverage would not have been issued, We will refund the premium paid.

EXHIBIT "A"                                    McGuire - 06



## LEGAL ACTIONS

You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after three years from the date written proof of loss is required to be given.

### PART 5: PREMIUM AND REINSTATEMENT

#### PAYMENT OF PREMIUM

Premiums, payable in United States currency, are due at the start of each Policy Term. Payment may be made to Us at Our Home Office at CNA Plaza, Chicago, Illinois 60685, or to Our agent. Change in Policy Term will be allowed on written request.

#### GRACE PERIOD

A grace period of 31 days will be allowed for late payment of each premium due after the first premium. During this time the policy will remain in force.

If the premium is not paid when due or within the grace period, the policy will terminate.

#### REFUND OF UNEARNED PREMIUM AT DEATH

Upon notice of Your death, We will make a pro-rata refund of any premium paid for a period beyond the date of Your death.

#### REINSTATEMENT

If Your Policy lapses because the premium was not paid when due or within the grace period, a subsequent acceptance of premium by Us or by Our agent without requiring an application for reinstatement will reinstate Your policy.

If We require an application for reinstatement, and We accept Your premium, You will be issued a conditional receipt for premium. If We approve Your application for reinstatement, the policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within 45 days of the conditional receipt or the policy will be reinstated on the 45th day after the date of the conditional receipt.

The reinstated policy will cover only loss due to: 1) Injury that occurs after the date of reinstatement; or 2) Sickness that begins more than 10 days after the date of reinstatement. Except for this and any new provisions added as a result of the reinstatement, both Your rights and Ours will be the same as before the policy lapsed. If We acept premium for a reinstated policy, We can apply it back up to 60 days before the date of reinstatement.

### PART 6: THE CONTRACT

#### ENTIRE CONTRACT AND CHANGES TO IT

This policy is legal contract between You and Us. The policy, the application and any attached papers make up the entire contract. No one has the right to change any part of this policy or to waive any of its provisions unless the change is approved in writing on the policy by one of Our officers.

#### TIME LIMIT ON CERTAIN DEFENSES

After Your policy has been in force for 2 years, no misstatements, except fraudulent misstatements, made by You in the application shall be used to void the policy or to deny a claim for loss incurred after the 2 year period.

No claim for loss incurred after 6 months from the Effective Date shown on th Schedule will be reduced or denied because a disease or physical condition existed prior to the Effective Date, unless it is excluded from the policy by name or specific description.

#### CONFORMITY WITH STATE STATUTES

If any provision of this policy is in conflict with the statutes of the state in which You reside on the policy Effective Date, the provision is automatically amended to meet the minimum requirements of the statue.

P1-59433-A                                                           -8-



CNA Plaza — A Stock Company
Chicago, Illinois 60685

## EXTENDED HOME HEALTH CARE RIDER

In consideration of the payment of an additional premium of <u>the amount which is included in the premium shown on the policy schedule</u>, it is agreed that the following is added to the policy to which this rider is attached.

### GENERAL BENEFIT INFORMATION

1. We will pay for a maximum of seven total visits per Week. This total may include Home Health Care Visits and Adult Day Care Visits.

2. In order to be payable, all Home Health Care Services and Adult Day Care must begin while Your policy is in force and be required as a result of Injury or Sickness. Termination of Your policy will not affect any claim for Home Health Care Services or Adult Day Care for a Plan of Treatment that begins before termination up to the end of the Benefit Period for that claim.

3. If Home Health Care Services and/or Adult Day Care are received as a result of more than one Injury or Sickness at the same time, and there is more than one Plan of Treatment established, We will pay benefits as if there was only one Plan of Treatment for all conditions being treated.

4. Benefits for Home Health Care Services and Adult Day Care begin after the Elimination Period for this rider and are payable for the length of the Benefit Period for this rider. However, in order for benefits to be payable for Secondary Services or Adult Day Care such services must be received in a Week in which at least one Primary Service was received. Benefits need not be payable under this rider for such Primary Service.

### HOME HEALTH CARE BENEFIT

If You receive Home Health Care Services in a Home Convalescent Unit, as part of a Plan of Treatment, We will pay You a benefit equal to the amount of expenses incurred, but not to exceed 50% of the Long Term Care Benefit shown in Your policy schedule for each visit.

We will not pay benefits for supplies provided by a Home Health Care Agency.

To the extent that benefits are available to You under Medicare, We will not duplicate coverage under this policy.

### ADULT DAY CARE BENEFIT

If during a Plan of Treatment You receive Adult Day Care, We will pay a benefit equal to the actual charge made by the Adult Day Care Center up to 50% of the Long Term Care Benefit shown in Your policy schedule for each day you receive Adult Day Care. We will not pay benefits for supplies provided by an Adult Day Care Center.

### DEFINITIONS

"Home Health Care Services" means Medically Necessary Primary Services and Secondary Services provided by a Home Health Care Agency. Home Health Care Services also include homemaker services provided during, but not necessarily described in, a Plan of Treatment.

Home Health Care Services do not include services provided by members of Your immediate family, which means Your spouse, children, brothers or sisters or persons related to You by marriage.

"Home Health Care Agency" means an entity which provides Home Health Care Services and:

1. has an agreement as a provider of Home Health Care Services under the Medicare program; or
2. is licensed by state law as a Home Health Care Agency; or
3. is accredited as a Home Health Care Agency or as a provider of Home Health Care Services by the National League of Nursing, American Public Health Association or Joint Commission on Accreditation of Hospitals.

A Home Health Care Agency will also mean a registered nurse, a licensed practical nurse or a licensed vocational nurse operating within the scope of his or her license.

Inv. No. B1-44295-A

EXHIBIT "A"    McGuire - 08

"Plan of Treatment" means a program of care and treatment by a Home Health Care Agency established and approved in writing by Your physician before the start of Home Health Care Services and confirmed at least once every 60 days.

"Primary Services" are nursing care services provided by a registered nurse (RN), a licensed practical or vocational nurse (LPN or LVN); physical therapy; and speech therapy.

"Secondary Services" are services provided by a medical social worker; occupational therapy; home health aide services; and homemaker services.

"Home Health Care Visit" means each visit to a Home Convalescent Unit by a person performing Primary Services or Secondary Services provided through or coordinated by a Home Health Care Agency.

"Home Convalescent Unit" means Your home, a private home; a home for the retired or aged; or a place which provides residential care. It does not include a hospital or a nursing facility.

"Adult Day Care" means a community-based group program designed to meet the needs of functionally impaired adults through an individual plan of care. It is a program that provides health, social and related support services in a protective setting during any part of the day, but less than 24-hour care.

"Adult Day Care Center" means a facility which is licensed or certified by the state as an adult day care center.

"Adult Day Care Visit" means a visit to an Adult Day Care Center.

"Week" means a period of time which begins at 12:01 a.m. Monday and ends at 12 midnight Sunday.

"Elimination Period" for this rider means the number of Home Health Care Visits and Adult Day Care Visits at the beginning of a Benefit Period for which no benefits are payable.

The Elimination Period will be 1) five Home Health Care Visits or Adult Day Care Visits or 2) no visits if Home Health Care or Adult Day Care follows within 30 days of a Long Term Care Facility confinement of at least 15 days or a Hospital confinement of at least 3 days.

"Period of Care" means days of Hospital confinement, Long Term Care facility confinement or Skilled, Intermediate, Intermediate or Personal Care or Custodial Care in any setting due to the same or related causes not separated by 180 calendar days. Successive periods of care separated by at least 180 days will be considered a new period of care.

"Benefit Period" means the period of time for which You are eligible to receive benefits under this rider for any one Period of Care. A Benefit Period begins on the first day You are eligible to receive a benefit under the rider and ends at the earlier of the end of a Plan of Treatment or the end of 104 weeks. If You are confined in a Hospital or Long Term Care Facility during a Period of Care, such days of confinement will not be counted against the 104 week limit.

This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to all the exceptions, limitations and provisions of the policy not inconsistent with the rider.

*[signature]*  
Corporate Secretary

*[signature]*  
Chairman of the Board

R1-44295-A     -2-     Inv. No. B1-44295-A

EXHIBIT "A"     McGuire - 09

*[Upside-down text at top of page:]* "Plan of Treatment" means a program of care and treatment by a Home Health Care Agency... in writing by Your physician before the start of Home Health Care Services and continued...

## Continental Casualty Company



CNA Plaza
Chicago, Illinois 60685

A Stock Company

### POLICY AMENDMENT RIDER

It is agreed that the following is added to the policy to which this rider is attached.

The Lifetime Maximum Benefit limitation in the policy is deleted.

The words "One Period of Confinement" wherever it appears in the policy is replaced by the words "Period of Care." "Period of Care" means days of Hospital confinement, Long Term Care Facility confinement or Skilled, Intermediate or Personal Care or Custodial Care in any setting due to the same or related causes not separated by 180 Calendar days. Benefits need not be payable by the policy during the entire Period of Care.

If separated by 180 days or more, a new Period of Care begins subject to a new hospitalization requirement, if any, maximum benefit, if any, and Elimination Period, if any.

This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to all the exceptions, limitations and provisions of the policy not inconsistent with the rider.

*[signature]*
Corporate Secretary

*[signature]*
Chairman of the Board

B1-44296-A
B1-44296-A

EXHIBIT "A"            McGuire - 010



CNA Plaza  
Chicago, Illinois 60685

A Stock Company

## ALTERNATE PLAN OF CARE

It is hereby agreed that the following is added to the policy to which this rider is attached.

If You would otherwise require confinement in a Long Term Care Facility, we may pay for the cost of services under a written alternate plan of care, if appropriate alternative care is a medically acceptable option.

The alternate plan may be initiated by You or Us. It will be developed by health care professionals and consistent with generally accepted medical practice. Those parts which are mutually agreeable to You, Your physician and Us will be adopted.

The alternate plan of care may detail: (1) special treatments; (2) different sites of care; or (3) different levels of care. Suggested services and benefit levels may be different from, or not otherwise covered by, the policy. If so, they will be paid at the levels specified in the alternate plan of care.

The total of all benefits paid under the policy and this rider will not exceed the Maximum Benefit, if any, payable for a Long Term Care Facility confinement due to the same or related causes within a Period of Care.

### DEFINITIONS

Maximum Benefit means the Long Term Care Benefit shown in the schedule times the Benefit Period shown in the schedule.

Period of Care means days of Hospital confinement, Long Term Care Facility confinement, or Skilled, Intermediate or Personal Care or Custodial Care in any setting due to the same or related causes not separated by 180 calendar days.

This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to all the exceptions, limitations and provisions of the policy not inconsistent with the rider.

*[signature]*  
Corporate Secretary

*[signature]*  
Chairman of the Board

R1-44772-A

B1-44772-A

EXHIBIT "A"   McGuire - 011



CNA Plaza
Chicago, Illinois 60685

A Stock Company



### INFLATION PROTECTION RIDER

In consideration of an additional premium of the amount which is included in the premium shown in the policy schedule, it is agreed that the following benefit is added to Your policy:

### INFLATION PROTECTION BENEFIT

"Inflation Protection Increase" means an amount equal to 5% of the Long Term Care Benefit shown in Your Schedule.

We will add the Inflation Protection Increase to Your Long Term Care Benefit on each anniversary of Your Policy Effective Date. Inflation Protection Increases will occur even if benefits are being paid.

This rider takes effect and ends at the same time as the policy to which it is attached. It is subject to the definitions, limitations, and provisions of the policy which are consistent with the rider.

Secretary

Chairman of the Board

R1-59439-A

INV. NO. B1-59439-A

EXHIBIT "A"    McGuire - 012

The first term of coverage of the policy to which this rider is attached is from
to \_\_\_\_11-4-90\_\_\_\_ for a premium of $ \_\_\_\_124.99\_\_\_\_. Terms of coverage subsequent to
\_\_\_\_11-4-90\_\_\_\_ shall be on an \_\_\_\_ANNUAL\_\_\_\_ basis and the term premium applicable shall be that stated in the schedule.

This rider takes effect on \_\_\_\_10-1-90\_\_\_\_ twelve o'clock noon, Standard Time, at the residence of the Insured and terminates concurrently with the policy to which it is attached.

Attached to and made a part of Policy No. \_\_076355317\_\_ issued to \_\_\_\_DOROTHY D. MC GUIRE\_\_\_\_
_____ by the Continental Casualty Company, Chicago, Illinois.

*Corporate Secretary*                              *Chairman of the Board*

Countersigned on _____ by _____
                                                Authorized Agent
R1-50522-A95